IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | | |
|---|---|---|
| MVP LANES, LLC<br>26 South Street<br>Baltimore, MD 21202 | *<br>*<br>*<br>* | CIVIL NO. RDB-11cv2402 |
| Plaintiff | *<br>* | |
| vs. | *<br>* | |
| RI HISPANIC BANC GROUP, LLC<br>1352 Newport Avenue<br>Pawtucket, RI 02861 | *<br>*<br>*<br>* | |
| Defendant | *<br>* | |

*********************************************************************

## VERIFIED COMPLAINT FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF AND FOR SPECIFIC PERFORMANCE

MVP Lanes, LLC, Plaintiff, by and through undersigned counsel, files this Complaint against RI Hispanic Banc Group, LLC, Defendant, for a Temporary Restraining Order and Preliminary and Injunctive Relief and for Specific Performance, and states as follows:

### PARTIES

1.   Plaintiff MVP Lanes, LLC is a Maryland Limited Liability Corporation. Its business office is located at 26 South Street, Baltimore, Maryland 21202.

2.   Defendant RI Hispanic Banc Group, LLC is a Rhode Island Limited Liability Company with its current office located at 1352 Newport Avenue, Pawtucket, Rhode Island 02861.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States.

4. Venue is properly in the United States District Court for the District of Maryland (Northern Division) under 28 U.S.C. § 1391(a)(1) and (2) because a substantial part of the events giving rise to the claim occurred in Maryland and because the property that is the subject of this action is situated in Baltimore County, Maryland.

5. Simultaneous jurisdiction also exists in an Arbitration Forum. As stated in *Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43, 51 (1st Cir. 1986), even where preliminary relief is for the arbitrator, a district court retains power to grant an interim preliminary injunction, where otherwise justified, for the interval needed to resort to the arbitrator. Divesting the district court of the authority to enter a preliminary injunction would render any subsequent arbitration process a "hollow formality." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048 (4th Cir. 1985). Here, the need for a temporary restraining order and interim preliminary injunction is clear, as the process for filing for arbitration, identifying and involving arbitrators, and obtaining injunctive relief in that forum is so time consuming that the equitable remedy needed will be lost, and the irreversible damages to the Plaintiff will be incurred. Thus, this Complaint is narrowly limited to seek the equitable remedies that are immediately necessary while Plaintiff proceeds to an arbitration forum.

**FACTS**

6. MVP Lanes, LLC ("MVP") developed and began construction of a 63,000 square foot bowling and entertainment complex in the Hunt Valley Towne Centre of Baltimore County, Maryland. It invested millions of dollars, entered into a lease, and engaged in a myriad of other business activities that would bring the concept to fruition. When it opens, MVP will employ more than 120 people.

7. MVP was in need of financing and was introduced to Defendant RI Hispanic Banc Group, LLC ("RI Hispanic"). RI Hispanic is in the business of leasing Stand-by Letters of Credit.

8. After a period of negotiations, MVP and RI Hispanic agreed to enter into a contract (the "SBLC Agreement") through which MVP leased a 366 day Stand-by Letter of Credit (SBLC) in the amount of $65 Million (U.S.) from RI Hispanic.

9. MVP and RI Hispanic signed the SBLC Agreement on April 13/14, 2011.

10. The SBLC Agreement is intended to provide MVP a $65 Million SBLC which is to collateralize a loan from a pre-approved third party (hereinafter the "Funding Party").

11. The SBLC Agreement required that MVP deposit a total of $90,000 in an escrow account in two separate tranches. The first deposit, $25,000, would cause RI Hispanic to create the SBLC draft, known as a "Pre-Advice" and send it via SWIFT[1] to the Funding Party's representative for approval, and the second tranche, $65,000, would cause RI Hispanic to deliver the approved SBLC via SWIFT to the Funding Party's bank. In both instances, MVP was to have been provided actual confirmation that the SWIFT was "received, authenticated, verified,

---

[1] A SWIFT is a secure electronic transmission utilized in the banking industry to forward, among other things, commercial instruments such as SBLC's.

3

and accepted." The SBLC Agreement also required that RI Hispanic independently assess and confirm in writing with MVP that it was satisfied with the Funding Party's ability to complete the transaction before MVP made its second escrow deposit (for $65,000).

12. The SBLC Agreement allows the Funding Party five (5) business days following delivery of the SBLC to its account to wire the loan proceeds to MVP, RI Hispanic, and several third party advisors.

13. On April 14, 2011, after the SBLC Agreement was signed, MVP caused $25,000 to be wired to RI Hispanic's designated escrow agent as agreed.

14. On June 8, RI Hispanic and MVP amended the SBLC Agreement for the limited purpose of substituting a new Funding Party.

15. On June 16, 2011, RI Hispanic gave MVP written notice that it was satisfied that the substituted Funding Party has funds on account sufficient to complete the transaction, and it requested that MVP wire the balance due ($65,000) to escrow.

16. On June 17, 2011, MVP funded escrow, thus completing its escrow obligations to RI Hispanic.

17. Upon information and belief, RI Hispanic withdrew the $65,000 from escrow, yet it is a fact that it has never provided MVP with **actual** confirmation that the SBLC was "received, authenticated, verified, and accepted by" the Funding Party's bank. Instead, it has merely represented to MVP that it performed under the SBLC Agreement.

18. Notwithstanding RI Hispanic's representations to MVP that it caused its bank to send the SBLC to the Funding Party's bank via SWIFT and the Funding Party's bank sent delivery acknowledgement by SWIFT plus additional confirmation of delivery through its Global Trade Services back offices, the Funding Party's bank has been unable to locate the

SWIFT transmission of the SBLC and consequently, it has been unable to escalate the instrument to the Funding Party's account.

19. MVP, the Funding Party, and various intermediaries have demanded that RI Hispanic provide **actual** confirmation that the SBLC was "received, authenticated, verified, and accepted" by the Funding Party's bank. These demands have been made by phone, in person, by letter, and by email on many dozens of occasions. The precise form of proof necessary is a true copy of the SWIFT that was allegedly transmitted by RI Hispanic's bank to the Funding Party's bank.

20. If the Funding Party's bank is provided a copy of the SWIFT, it will be in a position to identify the SBLC in its system if, in fact, it resides there. Without it, it cannot.

21. MVP and the Funding Party have provided RI Hispanic with the name of three (3) persons at the Funding Party's bank who are desirous of receiving and who are waiting to receive a copy of the SWIFT that RI Hispanic alleges that it sent.

22. MVP and the Funding Party have asked RI Hispanic to identify the names and to provide the contact information for its bankers who were responsible for issuing the SBLC and causing it to be transmitted by SWIFT to the Funding Party's bank. RI Hispanic has refused to provide this information.

23. RI Hispanic has advised MVP that it would cancel its SBLC Agreement if anyone other than the Funding Party's bank has any direct communications with RI Hispanic's bank. Yet, RI Hispanic has also consistently refused to share with the Funding Party's bank representatives the name and contact information of anyone at the issuing bank with whom they can communicate!

5

24. MVP, in this action, requests a Court Order requiring that RI Hispanic produce and send to the Funding Party's bank and to MVP a copy of the SWIFT that it alleges that it delivered to the Funding Party's bank to meet its obligations under the SBLC Agreement.

25. In response to MVP's and the Funding Party's many demands that RI Hispanic provide the Funding Party's bank a copy of the SWIFT containing the SBLC, RI Hispanic has promised cooperation. Notwithstanding its many promises, which include dates and times when it would send the copy of the SWIFT, RI Hispanic has failed to act, and has instead offered no more than a steady stream of absurd excuses, false statements, and improbable explanations. For example: (a) RI Hispanic has insisted that it doesn't have to send a copy of the SWIFT because it says that several employees of the Funding Party's bank and/or its investment bank affiliate have already seen SBLC – an excuse that has been unverified, and which RI Hispanic cannot back up by identifying by name any such person; (b) RI Hispanic has speculated that the Funding Party's account was incapable of receiving the SBLC based on RI Hispanic's supposition that the account was not adequately "seasoned" or funded – and assertion that has been evaluated and refuted by the Funding Party and its bank; (c) RI Hispanic has claimed that its bankers have been "unavailable" to transmit the copy of the SWIFT by email, even to the point of stating that a holiday caused them to not be at work when, in fact, there was no such holiday and the bank was open; (d) RI Hispanic has stated that its bankers (who it refuses to identify) have spoken with unidentified investment bankers employed by the Funding Party's affiliated investment bank – but who have no relationship to this transaction or to the Funding Party; and (e) RI Hispanic has claimed that its bank has called the Funding Party's bank, but cannot make contact – a disingenuous assertion since the Funding Party has three bankers waiting and none have even received messages. The two calls that did occur - both resulted in the Funding Party's bank

asking for a copy of the SWIFT, as RI Hispanic and its bank provided the Funding Party's bank code numbers that did not allow it to locate the SWIFT and thus the SBLC.

26. On August 23, 2011, MVP conducted a 10:00 a.m. conference call with Martien Eerhart, Managing Member of RI Hispanic, a representative of the Funding Party, intermediaries, and the Managing Member of MVP. During that meeting, RI Hispanic agreed, as it had on several occasions since the SBLC Agreement was executed, that it would cause its bank to send the Funding Party's bank a copy of the SWIFT and that it would also disclose to the Funding Party's bank the names of one or more representatives at RI Hispanic's bank who could be contacted by the Funding Party's bank thereafter. RI Hispanic committed to completing this task that day. Rather than completing its commitment, RI Hispanic failed to deliver the SWIFT and reported to MVP and the Funding Party that the Funding Party's bankers were contacted and said that they did not want to see a copy of the SWIFT. That report was false. The Funding Party's banker actually asked for the SWIFT so that the SBLC could be located if it was delivered as RI Hispanic contends.

27. The Funding Party has placed MVP and RI Hispanic on notice that it intends to issue a cancelation order and would withdraw its funding commitment because it has not received the SBLC in its account as required. The cancelation of funding will have devastating consequences, and RI Hispanic has been warned repeatedly about this.

28. The transaction was to have closed in June 2011.

29. The Funding Party's bank has stood ready, willing, and able to receive the email version of the SWIFT to help identify it in its system (if it was sent, by SWIFT, as RI Hispanic represents), and it has indicated that its patience has been exhausted due to the unexplainable

failure to deliver the SBLC as required and what it considers to be absurd excuses by RI Hispanic.

30. RI Hispanic's failure to cooperate is threatening the financing of the MVP project and will cause devastating, irreversible, consequences.

31. The space that MVP leased is unique to its success, and MVP will lose its opportunity to remain at Hunt Valley Towne Centre if this funding fails. Its landlord has threatened to withdraw from an existing Forbearance Agreement if this funding is not promptly completed, or if another willing tenant surfaces.

32. MVP will go out of business, and perhaps have to file bankruptcy if this funding fails.

33. Other serious consequences will befall MVP's contractors, who are owed money, and should MVP fail, it has been represented to MVP that several of their businesses will fail.

### Count I – Injunctive Relief

34. Paragraphs 1 through 33 above are repeated and incorporated herein by reference as if fully set forth.

35. MVP will suffer irreparable harm if RI Hispanic does not immediately produce an actual copy of the SWIFT that it claims it sent to the Funding Party's bank so that the SBLC can be located by the Funding Party's bank and escalated into the Funding Party's account.

36. RI Hispanic will not suffer any harm if it produces a copy of the SWIFT to the Funding Party's bank and to MVP. It is contractually obligated to provide this. It has promised to provide this on many occasions. And, there is nothing inherently harmful about RI Hispanic

8

providing a bank an email version of documents that it claims it previously sent that bank via SWIFT transmission.

37. MVP will succeed on the merits of this dispute, as RI Hispanic is contractually obligated to demonstrate that the SBLC was sent to the Funding Party's bank and "received, authenticated, verified, and accepted" by said bank. Further, RI Hispanic has promised to provide this same information on many other occasions.

38. The public interest is that MVP's funding succeeds. A collapse in funding will cause a series of bankruptcies and the loss of a major tenant that is central to the northern Baltimore County area and more than 120 full time jobs.

WHEREFORE, MVP requests that this Court issue a Temporary Restraining Order and, after a hearing on the merits, a Preliminary Injunction Order, each compelling RI Hispanic to immediately produce and cause to be delivered to the Funding Party's bank a true copy of the SBLC it issued pursuant to the SBLC Agreement and a true copy of the SWIFT and all associated transaction receipts that show that the Funding Party's bank "received, authenticated, verified, and accepted" the SBLC.

## Count II – Specific Performance

39. Paragraphs 1 through 38 above are repeated and incorporated herein by reference as if fully set forth.

40. The SBLC Agreement requires that RI Hispanic deliver a $65 Million SBLC to the Funding Party's bank which is to be used by MVP to collateralize a loan being offered by the Funding Party.

41. The SBLC Agreement requires that RI Hispanic confirm to MVP that it has, in fact, delivered the SBLC to the Funding Party's bank by SWIFT by producing true proof that the Funding Party's bank "received, authenticated, verified and accepted" the SBLC.

42. RI Hispanic has failed to perform its obligations under the SBLC Agreement.

43. The damages sustained and that will, in the future be sustained by MVP are many millions of dollars.

44. The damages and losses can be mitigated if RI Hispanic performs its duties under the Agreement before the Funding Party terminates its loan offer and before MVP's landlord withdraws from its Forbearance Agreement on MVP's lease.

45. MVP's remedies at law are inadequate.

WHEREFORE, MVP requests that this Court issue an Order compelling RI Hispanic to fulfill its obligations under the SBLC Agreement.

## VERIFICATION

I solemnly affirm under penalties of perjury that the contents of the foregoing Complaint are true to the best of my knowledge, information, and belief.

_____
Marc Seldin Rosen
Managing Member of MVP Lanes, LLC

Respectfully submitted,

_____
Marc Seldin Rosen
Federal Bar No. 02589
Rosen & Warshaw, LLC
26 South Street
Baltimore, Maryland 21202
(410) 244-1155

*Attorney for MVP Lanes*