IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MVP LANES, LLC                              *

     Plaintiff                              *

v.                                          *        Case No. RDB 11 CV 2402

RI HISPANIC BANCGROUP, LLC                  *

     Defendant                             *

                                                                                                        *

*     *     *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendant, RI Hispanic BancGroup, LLC ("RIHB"), by its undersigned attorneys, moves the Court to dismiss this action and provides this memorandum in support thereof.

Simply put, because RIHB is a Rhode Island corporation with absolutely no connection to the State of Maryland; because the work at issue in this case was performed in Rhode Island; because the contract at issue calls for the law of Rhode Island to govern; and because Maryland lacks the requisite significant contacts with RIHB necessary for jurisdiction, this Court must dismiss this action for lack of personal jurisdiction over the Defendant.

ARGUMENT

A.   Standard of Review

When a Defendant challenges a court's personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the burden ultimately rests with the Plaintiff to prove, by a preponderance of the evidence, grounds for jurisdiction. Robbins v.

Yutopian Enterprises, Inc., 202 F.Supp.2d 426, 427 (D.Md.2002) (Blake,J.);

Ottenheimer Publishers, Inc. v. Playmore, Inc., 158 F.Supp.2d 649, 650-51 (D.Md.

2001) (Blake, J.); see also, Mylan Laboratories, Inc. v. Akzo, N.V., 2 F.3d 56,

59-60 (4th Cir. 1993).  As will be established below, in this case not only has the

Plaintiff not made even the slightest allegation supporting personal jurisdiction in

this Court, but also the Plaintiff could not do so, as there is no factual basis for this

Court to assume either general or specific personal jurisdiction over this

Defendant.

> B.    Because Plaintiff has failed to demonstrate Defendant had
> sufficient minimum contacts with Maryland to confer either
> general or specific jurisdiction upon this Court, this action must
> be dismissed under F.R.C.P. 12 (b)(2).

Stripped to its essence, the issue presented in this case is whether a foreign

limited liability company who entered a contract in Rhode Island with a Maryland

corporation has sufficient minimum contacts with Maryland to make the excercise

of personal jurisdiction consistent with "traditional notions of fair play and

substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316

(1945).

A federal court sitting in diversity action, such as this one, has personal

jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute

confers jurisdiction and (2) the assertion of that jurisdiction is consistent with the

Constitution's guarantee of due process of law.  Robbins, 202 F.Supp.2d at 427-28

(citing Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993)); Ellicott

Machine Corp., Inc. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993);

Ottenheimer Publishers, Inc. v. Playmore, Inc., 158 F.Supp.2d 649, 650-51 (D.Md. 2001) (Blake, J.).

The Maryland long-arm statute limits jurisdiction to cases in which the cause of action "aris[es] from any act enumerated" in the statute itself.   Robbins, supra at 428 (citing Md. Code Ann., Cts. & Jud. Proc. § 6-103(a)). Thus, a Plaintiff must "'identify a specific Maryland statutory provision authorizing jurisdiction.'" Robbins, supra at 428 (quoting Ottenheimer, supra at 652); see also, Joseph M. Coleman & Assoc. Ltd. v. Colonial Metals, 887 F.Supp. 116, 118-19 n.2 (D.Md. 1995).

The Court's first inquiry when facing a challenge to personal jurisdiction made by a non-resident defendant is what specific Maryland statutory provision authorizes jurisdiction, and "[i]t is …necessary [for the Plaintiff] first to identify a specific Maryland statutory provision authorizing jurisdiction." Ottenheimer, supra at 652. In this case, because the Complaint filed with this Court is devoid of any reference to the Maryland long-arm statute, the Complaint is defective at law, and this Court has no basis to satisfy itself that it may appropriately exercise personal jurisdiction over this non-resident Defendant.  For that reason alone, the Court must dismiss the Complaint under F.R.C.P. 12(b)(2).  Robbins, supra at 428.

Moreover, because no portion of the transaction in question was performed here, and the Defendant in no way solicited the issuance of the contract, there is no provision of the Maryland long-arm statute that provides jurisdiction. Accordingly, the case should be dismissed.

The exercise of jurisdiction in this matter must be reviewed under the requirements of due process, because Maryland's long-arm statute is intended to

be "coterminous" with the reach of the Due Process Clause.  Camelback Ski Corp.
v. Behning, 307 Md. 270 (1986), vacated and remanded on other grounds, 480
U.S. 901 (1987), opinion on remand, 312 Md. 330, cert. denied, 488 U.S. 849
(1988).

Due process requirements are satisfied when *in personam* jurisdiction is
asserted over a nonresident corporate defendant that has "certain minimum
contacts with [the forum state] such that the maintenance of the suit does not
offend 'traditional notions of fair play and substantial justice.'"  Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984) (alteration in original)
(quoting Int'l Shoe Co. v. Washington, 326 U.S. at 316.  The minimum contacts
test announced in International Shoe requires that a defendant have certain
minimum contacts with a forum state for that state to assert personal jurisdiction
under the due process clause of the Fourteenth Amendment.

In Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) the Supreme
Court emphasized that one contract in and of itself does not automatically
constitute sufficient minimum contacts to support personal jurisdiction.  In Burger
King, the Court did find sufficient contacts with the forum state to exert jurisdiction.
471 U.S. at 478.  In that case, however, the Court looked to specific facts
establishing that there were substantial contacts with the forum state arising out of
the contract.  The franchise dispute grew out of a contract the defendant entered
into, which established a:

> carefully structured 20-year relationship that envisioned
> continuing and wide-reaching contacts with Burger King
> in Florida. In light of Rudzewicz' voluntary acceptance of

the <u>long-term and exacting regulation of his business</u>
<u>from Burger King's Miami headquarters</u>, the "quality and
nature" of his relationship to the company in Florida can
in no sense be viewed as "random," "fortuitous," or
"attenuated."

471 U.S. at 480 (emphasis added).

The United States District Court for the District of Maryland has expressed similar concerns about the exercise of personal jurisdiction arising out of a single contract.  <u>See</u>, <u>e.g.</u>, <u>Joseph M. Coleman & Assoc., Ltd. v. Colonial Metals</u>, 887 F.Supp. 116, 118-19 n. 2 (D.Md.1995) ("I do not believe that a company ... which (1) simply entered into a contract with a Marylander to have consulting work performed ... in Pennsylvania, (2) never entered into Maryland in regard to that contract, and (3) merely directed correspondence and phone calls into Maryland from Pennsylvania can be reasonably said to have 'transacted business' in Maryland").  <u>See also</u>, <u>Boschetto v. Hansing</u>, 539 F.3d 1011 (9th Cir. 2008), <u>cert</u>. <u>denied</u>, 129 S.Ct. 1318 (2009) (in sale of auto by single E-Bay transaction, the Court answered the purposeful availment question in the negative. The single transaction did not create any ongoing obligations in California, nor did it result in substantial business being conducted by the defendant there).

Based on the facts in this case, it is readily apparent that the Defendant did not purposefully avail itself of Maryland law.  Instead, these facts reflect contacts that are "random," "fortuitous," or "attenuated."  Accordingly, under the constitutional analysis, this action should be dismissed.

In the constitutional analysis, the crucial issue is whether the defendant's contacts with the forum state are substantial enough that it "should reasonably

anticipate being haled into court there." <u>World-Wide Volkswagen Corp. v.</u> <u>Woodson</u>, 444 U.S. 286, 297 (1980). A defendant has fair warning that it might be subject to a forum's jurisdiction if it purposefully directs its activities at forum residents <u>and</u> "the litigation results from alleged injuries that 'arise out of or relate to' those activities." <u>Burger King</u>, 471 U.S. at 472, <u>citing</u> <u>Keeton v. Hustler</u> <u>Magazine, Inc.</u>, 465 U.S. 770, 774 (1984); <u>Helicopteros</u>, 466 U.S. at 414. Where a nonresident defendant has purposefully engaged in significant activities within the forum state or has created "continuing obligations" with residents of the forum state, the defendant has obtained the benefits and privileges of conducting business there and would not be unreasonable to require it to submit to the burdens of litigation in that forum.  <u>Burger King</u>, 471 U.S. at 476.

The United States Court of Appeals for the Fourth Circuit has distilled these somewhat abstract concepts into a basic, three-pronged test:

> In determining specific jurisdiction, we consider (1) the extent to which the defendant "purposefully avail[ed]" itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.

<u>ALS Scan, Inc. v. Digital Service Consultants, Inc.</u>, 293 F.3d 707, 712 (4th Cir. 2002) (quotations and internal citations omitted). Only if the first prong is satisfied does the analysis proceed to consideration of the second and third prongs. <u>See</u> <u>Consulting Eng'rs Corp. v. Geometric Ltd.</u>, 561 F.3d 273, 278 (4th Cir.2009) (holding that a Colorado corporation did not purposefully avail itself of the privilege of doing business in Virginia to an extent sufficient to justify personal jurisdiction).

Under this analysis, personal jurisdiction in Maryland does not exist.  The facts in this matter reflect that the Defendant maintains no offices in Maryland (Affidavit of Martien Eerhart, Exhibit 1, ¶ 5); has no employees or agents in Maryland (Id. ¶ 6); owns no property in Maryland (Id. ¶ 5); does not engage in any long-term business activities in Maryland (Id. ¶ 7-8); made no in-person contact with any Maryland residents in connection with this business transaction (Id. ¶ 10); and did not solicit or initiate the business relationship (Id. ¶ 9).  Instead, this relationship was initiated by Plaintiff and its representatives, and required performance outside of Maryland (Id. ¶ 9-10).  Moreover, the parties agreed that the law of Maryland would <u>not</u> govern any disputes (MVP Exhibit B, ¶ 12.3).  In these circumstances, one could hardly state that the Defendant "purposefully" availed itself of the benefits of Maryland law.  Accordingly, this action should be dismissed.

C.     The Complaint Should be Dismissed Because the Dispute in This <u>Matter is Subject to a Mandatory Arbitration Clause</u>.

The Supreme Court has consistently emphasized that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

Under the FAA, Congress mandates that a court stay its proceedings pending arbitration where the court finds that an issue before it is arbitrable under the FAA.  9 U.S.C. § 3.  A number of courts have recognized the "propriety of a

dismissal rather than a stay pending arbitration under appropriate circumstances." Lombard Sec. Inc. v. Thomas F. White & Co., Inc., 903 F.Supp. 895, 900 (D.Md.1995);  see Arnold v. Arnold Corp., 920 F.2d 1269, 1275-1276 (6th Cir.1990); Cherry v. Wertheim Schroder & Co., Inc., 868 F.Supp. 830, 836 (D.S.C.1994).

Here there is a mandatory arbitration clause requiring disputes between the parties be subject to arbitration.  (MVP Ex. B, ¶ 12.5).  Accordingly, the entire matter should be dismissed in favor of the parties' selected forum for dispute resolution.  See Aggarao v. Mitsui O.S.K. Lines, Ltd., 741 F.Supp.2d 733, 743 (D.Md. 2010) (granting a Rule 12(b)(3) motion to dismiss for improper venue based on the existence of a mandatory arbitration clause).

> D.    Plaintiff's Request for Injunctive Relief Should be Denied
>        Because, inter alia, Harm that is Compensable by Money
>        Damages is Not Irreparable for Purposes of Injunctive Relief.

In light of the Court's ruling in the 2008 Winters case, previously cited by this Court, the Fourth Circuit has abandoned the former Blackwelder test and has held that to obtain a preliminary injunction, a plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. NRDC, 555 U.S. 7, 129 S.Ct. 365, 374 (2008); Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346 (2009).

Irreparable harm must be likely, not merely possible. Winters, 129 S.Ct. at 375-76.  As this Court has recognized, "harm is not 'irreparable' if it can be

compensated by money damages during the normal course of litigation."  Person
v. Mayor and City Council of Baltimore, 437 F.Supp.2d 476, 479 (D.Md.
2006)(RDB 06-1447).  Accord Hughes Network Sys., Inc. v. InterDigital Commc'ns
Corp., 17 F.3d 691, 694 (4th Cir.1994)(harm that is compensable by money
damages is generally not considered irreparable).  See also Multi-Channel TV
Cable Co. v. Charlottesville Quality Cable Operating Co., 22 F.3d 546, 551 (4th
Cir. 1994) ("Irreparable harm is suffered when monetary damages are difficult to
ascertain or are inadequate"); In re: Arthur Treacher's Franchise Litigation, 689
F.2d 1137, 1145 (3d Cir. 1982)("we have never upheld an injunction where the
claimed injury constituted a loss of money, a loss capable of recoupment in a
proper action at law").

    Because traditional remedies are available at law, such as monetary
damages, which remedies would be adequate to compensate for the injury
resulting from any potential loss of the $90,000 currently at issue in this matter,
irreparable harm has not occurred and injunctive relief is not available.
Accordingly, the request for injunctive relief as requested in this matter should be
dismissed.

    E.    Plaintiff's Request for Injunctive Relief Should Be Denied Due
          to Failure to Post Security in Accordance with Rule 65(c).

    Rule 65(c) of the Federal Rules of Civil Procedure requires that, a condition
of granting a preliminary injunction or temporary restraining order, the court must
impose a bond or other security.  No such security has been posted by the Plaintiff
in this matter, and thus injunctive relief should not issue.  See, e.g., Frank's GMC

<u>Truck Center, Inc. v. General Motors Corporation</u>, 847 F.2d 100 (3d Cir.

1988)(finding that an injunction was improvidently granted because the plaintiff

was not irreparably harmed and because the injunction was issued without

requiring the movant to post a bond.)

CONCLUSION

For the reasons and based upon the authorities set forth herein, Defendant,

RI Hispanic BancGroup, LLC, respectfully requests the Court to dismiss this action.


_____/s/_____
Samuel M. Riley
Bar No. 08842

Samuel M. Riley, LLC
409 Washington Avenue, Suite 200
Baltimore, Maryland 21204
410-296-8350

Attorney for Defendant,
RI Hispanic BancGroup, LLC