IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MVP LANES, LLC,                        *

      Plaintiff,                   *

        v.                     *        Civil Action No. RDB- 11-2402

RI HISPANIC BANCGROUP, LLC,      *

      Defendant.            *

*    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OPINION

Defendant RI Hispanic BancGroup, LLC ("RI Hispanic" or "Defendant") has filed a Motion to Dismiss (EFC No. 17) for Lack of Personal Jurisdiction under rule 12(b)(2) of the Federal Rules of Civil Procedure. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendant RI Hispanic BancGroup's Motion to Dismiss (ECF No. 17) is DENIED.

## BACKGROUND

In ruling on a motion to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

Plaintiff MVP Lanes, LLC ("MVP" or "Plaintiff") is a Maryland Limited Liability Corporation with its primary business office in Maryland. Opp'n at 3, EFC No. 21. MVP developed and began construction of a 63,000 square foot bowling and entertainment complex in the Hunt Valley Centre of Baltimore County, Maryland. Compl. ¶6, EFC No. 1. In 2011, MVP needed financing, and was introduced to RI Hispanic. *Id.* at ¶7. RI Hispanic is a Rhode Island

Limited Liability Company with its principal office located in Providence, Rhode Island and a home office in Nantucket, Massachusetts. RI Hispanic's sole owner and alter ego is Martien Eerhart ("Eerhart").  Opp'n at 3.

After negotiations, both MVP and RI Hispanic agreed to enter into a contract (the "SBLC Agreement") through which MVP leased a 366 day Stand-by Letter of Credit ("SBLC") in the amount of $65 Million from Defendant.  Compl. ¶8.  Using electronic messaging, telephone calls, letters and text messages that were intended to reach and did reach Plaintiff, in Maryland, RI Hispanic represented to MVP that it had a direct banking relationship with The Bank of Nova Scotia ("Scotia Bank") and that Defendant could cause Scotia Bank to issue a $65 Million SBLC to MVP to fund MVP's project.  Opp'n at 3.  Eerhart led MVP to believe that RI Hispanic had the credit available and in place to support this $65 Million SBLC transaction.  *Id.*  The SBLC Agreement required MVP to deposit a total of $90,000 in an Interest Only Lawyer's Trust Account ("IOLTA") chosen by Defendant.  *Id.* at 4-5.  Defendant represented through emails and other communications that Cape Canaveral Investments Corporation ("Cape Canaveral") was the escrow agent and allegedly falsely represented to MVP that the account was an IOLTA controlled by Jose R. Yanez.  Opp'n at 1.  The account designated by Defendant to receive the $90,000 does not appear to have been an IOLTA account, and the escrow agent, presumably with MVP's money has disappeared.  *Id.* at 2.

RI Hispanic subsequently insisted that the $65 Million SBLC had been established and transmitted to the Funding Party's bank, Bank of America, as agreed upon on in the SBLC Agreement.  MVP, the Funding Party, and various intermediaries have made numerous demands, in emails, phone calls, and in person, that Defendant provide actual confirmation through a copy

of the SWIFT.[1]  However, this confirmation has not been provided.  Compl. ¶19, Opp'n at 7.

MVP has been given many excuses and explanations through electronic communications and

telephone calls, when they inquired and complained about RI Hispanic's failure to perform its

obligations.  Opp'n at 6.  The Funding Party has placed both Plaintiff and Defendant on notice

that it intends to issue a cancelation order and would withdraw its funding commitment because

it has not received the SBLC in its account as required.  Compl. ¶7.  Defendant's failure to

cooperate is threatening the financing of the MVP project and could cause devastating

consequences.  *Id.* ¶8.  As a result of this failure, MVP filed this action, seeking injunctive relief

and specific performance through an order issued by this Court compelling Defendant to fulfill

its obligations under the SBLC Agreement.

On September 7, 2011, this Court held a hearing on MVP's Motion for Temporary

Restraining Order and Preliminary Injunction.  During the hearing, counsel for RI Hispanic

represented to the Court that he would strive to obtain an affidavit from a high-ranking RI

Hispanic executive that would be satisfactory to the parties.  With this in mind, this Court did not

completely grant MVP's request for a temporary restraining order, but did order that RI Hispanic

deposit $90,000 in the Court's Registry by 5:00 p.m. on September 9, 2011.  *See* Sept. 7 Order,

ECF No. 12.  After the $90,000 was not deposited in the Court's Registry, this Court held a

teleconference on the record on September 12, 2011 to discuss the status of the case.  During the

teleconference, counsel for RI Hispanic represented that the $90,000 was not in the possession of

his client, and was to be deposited to the Court's Registry by Cape Canaveral, the third party

escrow agent.  In light of this representation, counsel for both parties agreed to continue the

---

[1]  A SWIFT is a secure electronic transmission utilized in the banking industry to forward, among other
things, commercial instruments such as SBLC's.

hearing on MVP's motion until Wednesday, September 14, 2011.   However, because RI Hispanic had not yet complied with this Court's September 7 order, Martien Eerhart, the Managing Director of RI Hispanic was ordered to be present at the September 14 continued hearing.  *See* Sept. 12 Letter Order, ECF No. 14.

During the September 14 hearing, Mr. Eerhart appeared, and made numerous admissions. Chiefly, Mr. Eerhart stated that the entirety of RI Hispanic's assets amount to less than $1,500, and that his personal bank account contains approximately $1,700.   Eerhart conceded that, contrary to his previous representations to MVP in their SBLC Agreement negotiations, he had no direct relationship with Scotia Bank and had never spoken to any Scotia Bank employees. Furthermore, Eerhart claimed that he has never personally met his "partner," James Pierce, the person who initially led Eerhart to designate Cape Canaveral as the escrow agent in the SBLC transaction.  Needless to say, there has been no accounting for the $90,000 that was the subject of this Court's September 7 Order.  During this hearing, counsel for RI Hispanic indicated that he believed personal jurisdiction was lacking in this case, and that he planned to file a motion to dismiss on that ground.  The hearing was continued until September 21, 2011.

During the continued hearing on September 21, MVP indicated that it had conducted research into the legitimacy and status of Cape Canaveral's escrow agent Jose Yanez. Apparently, there is only one listed lawyer in Florida by the name of Jose Yanez.  A call placed to his office by counsel for MVP revealed that Mr. Yanez' office had no knowledge of any Cape Canaveral Investment Corporation.   Counsel for RI Hispanic indicated that he was working feverishly to comply with this Court's September 7 Order, but his client was still unable to deposit the requisite $90,000 into the Court's Registry.  However, because RI Hispanic filed its Motion to Dismiss (ECF No. 17) challenging this Court's jurisdiction over the non-Maryland

Defendant RI Hispanic, this Court continued the hearing on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction pending resolution of Defendant's Motion to Dismiss.  By Letter order of September 21, 2011, this Court set a briefing schedule for the motion to dismiss.  That motion is now ripe for resolution.

## STANDARD OF REVIEW

When a defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving grounds for jurisdiction by a preponderance of the evidence.  *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993).  This requires the plaintiff to produce competent evidence to sustain jurisdiction.  *Nichols v. G.D. Searle & Co.*, 783 F. Supp. 233, 235 (D. Md. 1992).  If the court is deciding the issue without a hearing, the plaintiff is required to only make a *prima facie* showing of jurisdiction.  *Mylan*, 2 F.3d at 60.

The applicable legal paradigm to analyze a Rule12(b)(2) motion is well established.  If the defendant's contacts with the forum state are "continuous and systematic," the district court has general jurisdiction over the nonforum defendant.  *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-415 (1984).  Plaintiff has not contended that this Court may exercise personal jurisdiction over Defendant on the basis of their "continuous and systematic" contacts with Maryland.  Where, as here, the contacts are not sufficient to establish general jurisdiction, the plaintiff must establish the existence of specific jurisdiction by demonstrating that: (1) the nonforum defendant purposely directed its activities toward residents of the forum state or purposefully availed itself of the privilege of conducting activities therein; (2) plaintiff's cause of action arises out of the results from the defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction in the case is reasonable, i.e., is consistent with "fair play and substantial justice." *Ritz Camera Centers Inc. v. Wentling Camera Shops Inc.*, 982 F. Supp. 350,

353 (D. Md. 1997) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-478 (1985)).  A federal district court may exercise personal jurisdiction over a nonresident defendant even if that defendant was not physically present in the state.  *Mackey v. Compass Marketing*, 892 A.2d 479, 486 (Md. 2006).

A federal district court may exercise personal jurisdiction over a nonresident defendant "if two conditions [are] satisfied: (1) the exercise of jurisdiction must be authorized under the state's long arm statute; and (2) the exercise of the jurisdiction must comport with the due process requirements of the Fourteenth Amendment."  *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citing *Christian Sci. Bd. of Dirs. Of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001)).  Because "Maryland has construed [its] long arm statute to authorize the exercise of personal jurisdiction to the full extent allowable under the Due Process Clause of the Fourteenth Amendment," *Mackey* 892 A.2d at 486, it has often been said that two inquiries merge into one.  *See, e.g.*, *Dring v. Sullivan*, 423 F. Supp.2d 540, 544 (D. Md. 2006) (collecting cases).  Despite the coextensive reach of Maryland's long-arm statute and the Due Process Clause, however, the Court of Appeals of Maryland recently clarified that "[d]etermination of personal jurisdiction is a two-step process.  First, the requirements under the long-arm statute must be satisfied, and second, the exercise of personal jurisdiction must comport with due process."  *Mackey*, 892 A.2d at 486; *see also id.* at 493 n. 6 (explaining that the court's prior statements that "our statutory inquiry merges with our constitutional examination" does not "mean . . . that it is now permissible to simply dispense with analysis under the long-arm statute").  Thus a plaintiff must "identify a specific Maryland statutory provision authorizing jurisdiction."  *Ottenheimer Publishers, Inc., v. Playmore Inc.*, 158 F. Supp. 2d 649, 652 (D. Md. 2001).  Although it is preferable for a plaintiff to identify the

statute authorizing jurisdiction in its complaint, a plaintiff alternatively may reference the applicable statute in its response to a defendant's motion to dismiss. *Johansson Corp. v. Bowness Constr. Co.*, 304 F. Supp. 2d 701, 7104 n.1 (D. Md. 2004).

## ANALYSIS

In determining the existence of jurisdiction, the court should draw all "reasonable inferences" from the proof offered by the parties in the plaintiff's favor. *Mylan,* 2 F.3d at 62. This does not mean, however, that the courts must "look solely to the proof presented by the plaintiff in drawing such inferences." *Id.* Rather, the court must consider "all relevant pleading allegations in the light most favorable to the plaintiff," and draw reasonable inferences. *Id.*

Although Plaintiff has not cited to any specific provision of the Maryland long-arm statute, it appears that Plaintiff's argument is based on Section §6-103(b)(1), which extends personal jurisdiction to any "person, who directly or by an agent . . . [t]ransacts any business . . . in the State." MD. CODE ANN., CTS. & JUD. PROC. § 6-103. Plaintiff relies on this Section insofar as it argues that the Defendant knowingly entered into the SBLC Agreement and subsequent business transaction with a Maryland corporation.

Under the second prong of the personal jurisdiction analysis, this Court must determine whether the exercise of personal jurisdiction would comport with the Due Process Clause requirements of the Fourteenth Amendment. For a non-resident defendant, "due process requires only that . . . a defendant . . . have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). A determination of what qualifies as "minimum contacts" depends on the number and relationship of a defendant's contacts to the forum state and whether a defendant's alleged act or omission is

related to the present cause of action.

Defendant argues that because it maintains no offices in Maryland, no employees or agents in Maryland, owns no property in Maryland, and made no in-person contact with any Maryland resident to solicit a business relationship, and therefore it cannot be haled into Maryland.  Here, Defendant's contacts with the forum state are substantial enough that it "should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).   The United States Court of Appeals for the Fourth Circuit has determined that a defendant's physical presence is unnecessary.  As technology has evolved, so have the standards.  *ALS Scan, Inc., v. Digital Service Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002).  Physical presence within a state is not a necessary prerequisite to the proper assertion of personal jurisdiction and that under most states' long-arm statutes, certain acts and effects of those acts may be the basis for a court to exercise jurisdiction of a nonresident defendant who has not physically entered within the territorial borders of a the state. *Mackey*, 892 A.2d at 483.

Here, Defendant used electronic messaging, telephone calls, letters, and text messages to reach Maryland and MVP to discuss and enter into a contract with MVP.  Compl. ¶19.  In *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp 1119 (W.D. Pa 1997), the court determined that when a person purposefully directs electronic activity into the state with the intention of engaging in business with the recipient, and that activity creates potential cause of action cognizable in the State's courts, it is appropriate to conclude that jurisdiction over the out of state party comfortably meets the Due Process Clause of the Fourteenth Amendment.  *Carefirst*, 334 F.3d 390; *ALS Scan Inc.*, 293 F.3d 707.  The Supreme Court in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), said that "jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State . . . it is an inescapable fact of

modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King Corp.*, 472 U.S. at 476.  The inquiry that needs to be analyzed is whether the defendant's actions were "purposefully directed" toward residents of another State.  *Id.*

Plaintiff's argument is based on the technological presence of Defendant in Maryland.  In the present case, RI Hispanic's electronic communications with Plaintiff have been constant, are in relation to the transaction and contract in question, and they serve as the basis for cognizable causes of action within the State of Maryland.  This Court, sua sponte, identified the $90,000 escrow deposit by MVP as a source of concern, and that fact has led to admissions by Eerhart in Court that he has no direct banking relationship with Scotia Bank, unlike the representations he made to MVP at the time they entered into this contract.  Opp'n at 12.  Plaintiff has presented dozens of electronic communications from Eerhart, most directed to MVP in Maryland, and all regarding this contract.  Defendant has sent many emails to MVP in Maryland offering explanations as to why the SBLC did not reach its intended destination.  Compl. ¶19.

Despite RI Hispanic's argument that no portion of transaction was conducted in Maryland, Defendant knew that the $65 million SBLC and SBLC Agreement was for financing of Plaintiff's project in Hunt Valley, Maryland and that Plaintiff was a Maryland corporation with its principal place of business in Maryland.  Compl. ¶6, 8.  Defendant reached into Maryland and took $90,000 from a Maryland corporation without subsequent performance of the SBLC Agreement.  Defendant's numerous electronic messages, through electronic mail, texts and even phone calls were targeted messages in relation to this SBLC Agreement, the purpose of which was financing in Maryland, directed at a Maryland corporation.  Maryland, as the state of

residence of Plaintiff, "can be rightly said to have an interest in protecting the claims of its

citizens in contracts that are negotiated with citizens of foreign states . . . ." *Triad Capital Mgmt.*

*LLC., v. Private Equity Capital Corp.*, No. 07-C-3641, 2008 WL 4104357, at *6 (N.D. Ill. Aug.

25, 2008).   RI Hispanic purposefully directed its activities toward Maryland, entering into a

SBLC Agreement with a Maryland corporation in need of financing for a project in Maryland.

This Court can exercise personal jurisdiction over Defendant and therefore denies RI Hispanic's

motion to dismiss.[2]

<u>CONCLUSION</u>

      For the reasons stated above, Defendant RI Hispanic's Motion to Dismiss (ECF No. 17)

is DENIED.   Because this Court concludes it may exercise personal jurisdiction over the

Defendant, and because Defendant has still not complied with this Court's September 7, 2011

Order to Deposit $90,000 into the Court's Registry, Defendant will be ordered to provide a status

report regarding the Defendant's efforts to secure a bond in the amount of $90,000 by 5:00 p.m.

Tuesday, October 11, 2011.

      A separate Order follows.

Dated:      October 7, 2011        /s/_____

                                             Richard D. Bennett
                                             United States District Judge

---

[2]  As an additional argument, Defendant RI Hispanic argues that because the underlying contract between the parties contained an arbitration clause, this case should be dismissed and the case should proceed to arbitration.  However, as alleged by the Plaintiff, the underlying contract was the result of fraud on the part of the Defendant, and the arbitration clause also procured by fraud.  In light of the Plaintiff's allegations, the arbitration clause in the SBLC Agreement will not divest this Court of jurisdiction.